NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUN 24 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ROBERT DAVID JOHNSON, Petitioner - Appellant, v. RAYMOND MADDEN, Respondent - Appellee. | No.14-55905 D.C. No. 5:12-cv-01580-JFW-SS MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted May 2, 2016
Pasadena, California

Before: M. SMITH and NGUYEN, Circuit Judges, and WILKEN,** Senior District Judge.

Robert David Johnson appeals a district court order denying his habeas

corpus petition. We have jurisdiction under 28 U.S.C. § 2253, and we affirm.

The California Supreme Court's decision to deny Johnson's ineffective

---

*This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

**The Honorable Claudia Wilken, Senior District Judge for the U.S. District Court for the Northern District of California, sitting by designation.

assistance of counsel claim was not an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). To obtain relief on his state court petition, Johnson was required to show "both that his counsel provided deficient assistance and that there was prejudice as a result." *Harrington v. Richter*, 562 U.S. 86, 104 (2011). A petitioner attempting to show that his counsel's performance was deficient must overcome "a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Id.* (internal quotation marks omitted). And to show prejudice, the petitioner must demonstrate that "[c]ounsel's errors [were] so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* (internal quotation marks omitted). Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") , our review of the state court's decision is "doubly" deferential—that is, if there is "any reasonable argument" that counsel's performance was satisfactory, we must affirm. *Id.* at 105.

Here, we need not determine whether Johnson's counsel provided reasonable professional assistance; Johnson's claim fails on the prejudice prong. That is, Johnson fails to show that his counsel's failure to consult a Riverside gang expert deprived him of a fair and reliable trial. Much of Johnson's argument turns

2

on his view that he and his co-perpetrators committed the underlying robbery not as gang members, but as childhood friends on their own frolic. He argues that a defense gang expert's testimony about the distinctions between MDK, MD13, and RSSH would have undermined the state's case that the crime was committed "in association with a criminal street gang." For several reasons, the California Supreme Court could reasonably have rejected this argument.

First, Johnson's habeas expert adds little to the evidence already presented at trial through the testimony of the state's expert. For instance, the state's expert testified about MDK's split into MD13 and RSSH, and about the racial identities of the latter gangs. He further testified that MD13 and RSSH were separate gangs and that Johnson was a member of RSSH while his co-perpetrators were members of MD13. These are the same basic facts upon which Johnson now relies. Thus, the California Supreme Court could reasonably have concluded that additional gang expert testimony would not have changed the outcome of the case.

Second, and more importantly, the distinctions between the gangs are far from dispositive. Indeed, even if the jury had heard and credited all of the testimony by Johnson's expert, it still could have found that the robbery was committed in association with either MDK or MD13. As for MDK, the evidence at

3

trial undermined the habeas expert's claim that MDK had ceased to exist by the time of the robbery. This evidence included the victim's testimony that the perpetrators referred to MDK while committing the crime, as well as evidence that one perpetrator continued to sign letters with "MDK" after his name.

Moreover, even if it were true that MDK no longer existed, the evidence also supported a finding that the crime was committed in association with MD13, which descended from MDK. Because California's gang enhancement applies to crimes committed merely "in association with" a criminal street gang, it does not depend on Johnson's own membership in the gang or his intent to further the gang's interests. *People v. Valdez*, 55 Cal.4th 82, 132 (2012). Thus the jury could properly have found that Johnson committed the crime in association with MD13 even while he was a member of RSSH, and even if, as the habeas expert opines, RSSH never would have agreed to Johnson's working with MD13. Indeed, the value of such an expert opinion is undermined by the simple fact that Johnson did commit a crime with MD13 members despite his own gang affiliation. And although Johnson portrays the robbery as a mere frolic unrelated to a gang, these co-perpetrators were known by Johnson to belong to MD13. Ample evidence therefore supported the conclusion that Johnson's commission of robbery with

these four co-perpetrators was "in association with" MD13. The California Supreme Court could reasonably have determined that more expert testimony about the relationship between these gangs would not have altered this conclusion.

We are similarly unpersuaded by Johnson's argument, relying on *People v. Prunty*, 355 P.3d 480 (Cal. 2015), that a defense gang expert would have highlighted the state's failure to show that MD13 was a criminal street gang. While the predicate acts were committed only by MDK, not by MD13, the state's expert testified that MD13 descended directly from MDK. In that respect, this case is unlike *Prunty*, where the state sought to deem one gang a "criminal street gang" by introducing evidence of predicate acts committed by gang subsets whose relationship to the gang at issue was unproven. *Id.* at 81. Under those circumstances, the court held that the state failed to show that the gang at issue had committed the predicate acts necessary to deem it a criminal street gang. *Id.* ("The critical shortcoming in the prosecution's evidence was the lack of an associational or organizational connection between the two alleged Norteño subsets that committed the requisite predicate offenses, and the larger Norteño gang that Prunty allegedly assaulted Manzo to benefit.") Here, in contrast, the relationship between MDK and MD13 was established at trial, and it was a direct lineage. The

5

California Supreme Court could reasonably have determined that trial counsel's failure to contest the evidence that MD13 was a criminal street gang was not prejudicial.

**AFFIRMED.**

Johnson v. Madden, No. 14-55905

WILKEN, District Judge, dissenting:

The California gang enhancement applies when an individual commits a felony "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." Cal. Penal Code § 186.22(b)(1). Notably, the first prong of the statute requires that the crime be committed in association with a "criminal street gang" while the second requires that the defendant act with the intent to further conduct by "gang members."

The fact that a defendant committed a crime with gang members does not satisfy the first prong. Indeed, the California Supreme Court has noted that the California State Legislature included the first prong to make "clear that a criminal offense is subject to increased punishment under the [gang enhancement] only if the crime is gang related." People v. Albillar, 51 Cal. 4th 47, 60 (2010) (internal quotation marks omitted). "Not every crime committed by gang members is related to a gang" and "it is conceivable that several gang members could commit a crime together, yet be on a frolic and detour unrelated to the gang." Id. at 62 (internal citations omitted).

While, in some cases, California courts have inferred that a crime was committed "in association with" a criminal street gang when the defendant

1

knowingly committed the crime with a "fellow gang member," those cases all involved members of the same gang acting together and many involved crimes against rival gang members. See, e.g., id. at 61; People v. Leon, 161 Cal. App. 4th 149, 163 (2008); People v. Romero, 140 Cal. App. 4th 15 (2006). This case is different. There was no clear evidence that any of the men accompanying Johnson were members of the Riverside Skinheads (RSSH), the gang to which Johnson belonged. Moreover, there was no evidence that the victim of the crime was a member of a rival gang. That Johnson committed a crime with members of a different gang, against a non-gang member, raises no inference that the crime was gang-related.

An expert witness the defense could have engaged would have testified that members of the Riverside Skinheads and MD13, the gang affiliated with the Mexican Mafia to which Johnson's co-perpetrators belonged, might have socialized with each other because they were childhood friends, but that members of one of the gangs would never commit a crime in association with or for the benefit of the other gang.

Further, the prosecution made numerous erroneous statements of law with respect to the "in association with" requirement in its closing arguments, suggesting that the state need only prove that Johnson committed the crime in association with gang members instead of in association with a criminal street

2

gang. Defense counsel failed to explain the difference in her closing argument. The majority appears to repeat the prosecutor's mistake when it states that the value of any expert testimony on behalf of the defense "is undermined by the simple fact that Johnson did commit a crime with MD13 members despite his own gang affiliation."

Even if the prosecution proved that Johnson committed the robbery in association with a gang, it had to prove that the gang at issue met the statutory requirements. The California Supreme Court has held that the gang enhancement requires that

> the "criminal street gang" the prosecution proves to exist be the same gang that the defendant sought to benefit (or which directed or associated with the defendant in connection with the crime.) This "sameness" requirement means that the prosecution must show that the group the defendant acted to benefit [and] the group that committed the predicate offenses . . . is one and the same.

People v. Prunty, 62 Cal. 4th 59, 80-81 (2015). Here, the predicate acts were committed by MDK and Johnson was a member of the Riverside Skinheads acting with members of MD13. Accordingly, for Johnson's offense to qualify for the gang enhancement, the prosecution was required to prove "some associational or organizational connection" uniting MDK and MD13. Id. at 72.

The majority assumes that "direct lineage" between MDK and MD13 is enough to satisfy Prunty's sameness requirement. But the prosecution is required to present evidence that they have an "ongoing relationship--the kind of

3

relationship that amounts to being part of the same group." Id. at 83.  Such an ongoing relationship would be impossible if, as a defense expert would have testified unequivocally, MDK had ceased to exist as early as 2000, three years before the robbery.  Contrary to the majority's view, this basic fact was not provided by the prosecution's expert.  Nonetheless, his testimony that MDK did exist at the time of the crime was weak.  When asked, the expert said only that MDK "still exists because the MD13 came from MDK and RSSH came from MDK."  If the state's case is weak there is a greater likelihood that the result of the trial would have been different.

The other evidence of MDK's continuing existence that the majority points out was also weak.  The robbery victim testified that at some point during the approximately four and a half hours that Johnson and the other men were in his apartment, one or more of the men "made reference to MDK."  This is not evidence that MDK still existed.  Nor is an undated letter signed by one of the perpetrators with "MDK" after his name.

It was crucial for effective counsel to oppose the gang enhancement because its application had extreme consequences for Johnson's sentence.  It increased the maximum sentence from a nine-year determinate sentence to a fifteen-year to life indeterminate sentence, which in turn was doubled to a thirty-

4

year to life sentence because the robbery was Johnson's second "strike." Johnson's total sentence was forty-three years to life.

It would not have been inconsistent for the defense to argue both that Johnson was factually innocent of the robbery and that the robbery was not committed in association with a street gang, especially not with his former gang MDK, which no longer existed. Johnson did not argue that he was not present at the time of the robbery, but rather that he went to the victim's apartment with his friends to "party." An argument that the gang enhancement should not apply would similarly be based on an argument that Johnson was "partying" with his friends, not intending to commit a crime in association with a criminal street gang.

I would hold that it was both deficient and prejudicial for counsel to fail to engage a gang expert familiar with gangs in Riverside and to fail to argue that the crime was not committed in association with any criminal street gang, particularly one that no longer existed. Any finding to the contrary would be an objectively unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984). Therefore, I would reverse the district court's denial of the § 2254 petition and remand with instructions to grant the writ unless the state retries the gang enhancement issue or resentences without the enhancement.