Filed 5/21/15  P. v. Resendez CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL RESENDEZ,<br><br>  Defendant and Appellant. | 2d Crim. No. B256614<br>(Super. Ct. No. KA103784)<br>(Los Angeles County) |

Michael Resendez appeals a judgment following conviction of battery, with a finding that he committed the criminal offense to benefit a criminal street gang.  (Pen. Code, §§ 242, 186.22, subds. (b), (d).)[1]  We affirm.

### FACTUAL AND PROCEDURAL HISTORY

In the early evening of November 19, 2013, Isabell Gutierrez noticed Resendez "staggering" in the street outside her home.  Resendez's behavior appeared odd; he stared at Gutierrez and held a "very tense" posture.

Resendez then walked along the driveway of the Gutierrez residence and approached Gutierrez.  She asked if she could assist him, but he stared at her and did not respond.  Resendez then "lifted . . . his shirt up" and walked to the neighboring property.  Gutierrez telephoned for police assistance.

---

[1] All further statutory references are to the Penal Code unless stated otherwise.

Resendez entered the home of Irma Flores through an unlocked back door. Flores's sister saw Resendez attempt to open the locked door of a bedroom occupied by Jesus Bernal, the boyfriend of Flores's daughter. At the time, Bernal and his infant were asleep. Flores's sister became frightened and screamed that an intruder was present. Resendez walked along the hallway of the Flores home, staring at the walls, ceiling, and a painting. Flores opened the front door, stood behind it, and encouraged Resendez to leave.

The commotion awoke Bernal who then walked outside. Resendez was "looking around" and walked through the gate of another residence. Bernal recognized Resendez as an inhabitant of a nearby residence that was frequented by members of the "East Side Bolen" criminal street gang. Bernal repeatedly warned Resendez to leave, but Resendez responded twice, "This is my hood."

Bernal and Resendez approached each other. Bernal asked Resendez his purpose in entering the Flores residence. Resendez again responded, "This is my hood." Bernal testified that Resendez "looked normal . . . [n]o drugs, no alcohol, . . . talk[ed] . . . normal." Resendez then punched Bernal in the face. Bernal, a self-described "big ass guy," responded by punching and kicking Resendez to the ground.

Baldwin Park Police Officer James Gallegos soon arrived and stopped the altercation by drawing his service weapon and Taser. During a subsequent search of Resendez, Gallegos found a baggie of methamphetamine and an unused syringe.

Baldwin Park Police Detective Jason Adams testified as a criminal street gang expert regarding Baldwin Park gangs. Adams stated that the Locos, a subset of the East Side Bolen gang, controls the area near the Gutierrez and Flores residences. Adams described the principal activities of East Side Bolen as committing crimes of theft, making criminal threats, narcotics and weapon sales, and murder. Resendez, a self-admitted member of East Side Bolen, has a "Locos" tattoo on his neck, an "ES" and a "BP" tattoo on his hands, and a "East Side Bolen" tattoo on his back.

Adams opined that Resendez is a mid-level member of East Side Bolen. Adams also opined that Resendez's battery on Bernal stemmed from Resendez's

2

association with East Side Bolen. Resendez's statements regarding "my hood," meant: "This is my gang's territory. I own this as well as my gang does, and I'm going to do what I want to further my activity, my criminal activities to instill fear so I can move forward." Adams concluded that the battery benefitted East Side Bolen because Resendez's behavior ("he's not going to back down") tended to establish that non-gang members cannot confront and challenge his actions. Adams pointed out that Gutierrez and Flores were unable to identify Resendez at trial and opined that the two women were intimidated and frightened by the gang's criminal reputation.

At trial, Resendez testified that he has been an East Side Bolen member for five years and was known in the neighborhood: "Everybody seen me before. Everybody knows exactly who I am." He stated that he was under the influence of drugs when he entered the neighboring residences and that he struck Bernal because he felt threatened. Resendez denied stating that the neighborhood was his "hood."

The jury convicted Resendez of battery and found that he committed the offense to benefit a criminal street gang. (§§ 242, 186.22, subds. (b), (d).) The trial court sentenced Resendez to a two-year prison term pursuant to section 186.22, subdivision (d). The court also imposed a $300 restitution fine, a $300 parole revocation restitution fine (stayed), a $40 court security assessment, and a $30 criminal conviction assessment, and awarded Resendez 386 days of presentence custody credit. (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a); Gov. Code, § 70373.)

Resendez appeals and challenges the sufficiency of evidence to support the criminal street gang enhancement of section 186.22, subdivision (b).

*DISCUSSION*

Resendez argues that the evidence presented at the close of the prosecutor's case-in-chief is insufficient to support the gang enhancement pursuant to section 1118.1 ("Judgment of Acquittal") standards and the due process clause of the Fourteenth Amendment to the United States Constitution. He also contends the evidence presented at the close of the evidentiary phase of the trial is insufficient to support the gang enhancement pursuant to the Fourteenth Amendment. Resendez relies upon evidence

3

that he acted alone, did not "shout" his gang name, and did not flash any gang signs during the crime. (*In re Daniel C.* (2011) 195 Cal.App.4th 1350, 1361-1364 [insufficient evidence supports gang enhancement where minor acted alone in stealing liquor and striking liquor store clerk]; *In re Frank S.* (2006) 141 Cal.App.4th 1192, 1199 [insufficient evidence supports gang enhancement where minor possessed knife while riding a bicycle].) He adds that he testified that he was under the influence of drugs when he entered the neighboring homes by mistake.

Section 186.22, subdivision (d) provides a sentence enhancement for "[a]ny person who is convicted of a public offense punishable as a felony or a misdemeanor, which is committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." The enhancement set forth in section 186.22, subdivision (b), containing identical relevant language, may be established by proof of gang-related conduct by a lone actor. (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1138-1139 [lead opinion]; *Id.* at pp. 1140-1141 (conc. opn. of Baxter, J.).)

In reviewing a claim of insufficient evidence, we examine the entire record and draw all reasonable inferences therefrom in favor of the finding or judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Jackson* (2014) 58 Cal.4th 724, 749.) Our review is the same in a prosecution primarily resting upon circumstantial evidence. (*People v. Watkins* (2012) 55 Cal.4th 999, 1020.) We do not redetermine the weight of the evidence or the credibility of witnesses. (*People v. Albillar* (2010) 51 Cal.4th 47, 60; *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact"].) We must accept logical inferences that the jury might have drawn from the evidence although we would have concluded otherwise. (*People v. Streeter* (2012) 54 Cal.4th 205, 241, disapproved on other grounds as stated in *People v. Harris* (2013) 57 Cal.4th 804, 834.) "If the circumstances reasonably justify the trier of fact's

4

findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Albillar*, at p. 60.)

This standard of review applies to findings made pursuant to the criminal street gang enhancement of section 186.22, subdivisions (b) and (d). (*In re Daniel C.*, *supra*, 195 Cal.App.4th 1350, 1359.) On review, our determination involves an analysis of evidentiary support for implied findings that, at the time the defendant committed the charged offense, he had the specific intent to "promote, further, or assist" gang members who themselves are engaged in criminal conduct. (*Ibid.*)

Regarding a motion for judgment of acquittal, section 1118.1 provides: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal. . . ." In determining whether the evidence was sufficient to support the trial court's ruling denying a section 1118.1 motion, we review the evidence "'as it stood at that point.'" (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1183; *People v. Houston* (2012) 54 Cal.4th 1186, 1215 [appellate review of denial of section 1118.1 motion uses standard of review of sufficiency of evidence to support a conviction, but focuses on evidence existing at time of motion].)

*Judgment of Acquittal*

The trial court properly denied Resendez's motion for judgment of acquittal because sufficient evidence and all reasonable inferences therefrom establish the gang enhancement finding beyond a reasonable doubt. Resendez brazenly entered and walked through a neighbor's home after testing a locked bedroom door. He repeatedly stated, "This is my hood," when confronted by Bernal outside another neighbor's home. As the trial court noted, Resendez's tattoos (neck and hand) of his gang name and initials were prominent and obvious. When Resendez met Gutierrez outside her home, he lifted his shirt thereby exposing the back tattoo "East Side Bolen." It matters not that Gutierrez may not have seen or understood the tattoo; Resendez represented his gang membership

5

by this action. Gang expert Adams testified that the Locos subset of the East Side Bolen gang controls the area of the Gutierrez and Flores residences. This evidence and reasonable inferences therefrom etablish that Resendez battered Bernal "in association with any criminal street gang." (§ 186.22, subd. (d).)

The battery also benefitted East Side Bolen because Resendez demonstrated by his actions that non-gang members cannot confront and challenge him. Adams opined that Resendez's conduct created fear and intimidation and may have precluded Gutierrez and Flores from identifying him at trial.

There was also sufficient evidence that Resendez had "the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (d).) The trial court could reasonably conclude that Resendez's actions created intimidation and fear in the neighborhood, thereby benefitting his gang's reputation for violence and facilitating future crimes by his gang.

*Judgment of Conviction*

Sufficient evidence also supports the jury finding of a criminal street gang enhancement. The jury was free to disbelieve Resendez's exculpatory testimony. As discussed *ante*, the testimony of Bernal and gang expert Adams establish the truth of the gang enhancement beyond a reasonable doubt.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

6

Douglas Sortino, Judge

Superior Court County of Los Angeles

_____

Ann Krausz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General, Nathan Guttman, Deputy Attorney General, for Plaintiff and Respondent.