Filed 4/18/16  P. v. Rail CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER THOMAS RAIL,<br><br>    Defendant and Appellant. | 2d Crim. No. B262478<br>(Super. Ct. No. 2013033751)<br>(Ventura County) |

Christopher Thomas Rail appeals after a jury convicted him on two counts of first degree burglary (Pen. Code, §§  459, 460, subd. (a)[1]), receiving stolen property (§ 496, subd. (a)), identity theft (§ 530.5, subd. (a)), second degree burglary (§§ 459, 460, subd. (b)), being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a)), and possession of a controlled substance without a prescription (Bus. & Prof. Code, § 4060).  In a bifurcated proceeding, the trial court found true the allegation that appellant committed one of the first degree burglaries while out on bail for another felony (§ 12022.1, subd (b)).  The court sentenced him to eight years in state prison and awarded him 507 days of presentence custody credit.  Appellant contends the court erred in admitting evidence of uncharged burglaries.  He also challenges the sufficiency of the evidence supporting his conviction of identity theft and claims he is

_____

[1] All statutory references are to the Penal Code unless otherwise stated.

entitled to additional presentence custody credit. We shall order the judgment modified to reflect an award of 19 additional days of credit. Otherwise, we affirm.[2]

STATEMENT OF FACTS

*Burglary of the Solis Residence; Under the Influence of a Controlled Substance*

On the morning on October 31, 2013, Richelle Solis looked out the window of her house in Camarillo and saw appellant walk by carrying a backpack. Richelle drove her children to school and returned home. When she was about to leave again about 30 minutes later, she noticed that the sliding glass door on the side of the house and the screen door on it were both open. After she closed and locked the door, she discovered that a jewelry box and its contents were missing from her bedroom and that a gun safe in the bedroom closet had been pried open. She called her husband Lorenzo, who told her to leave and call the police.

That same morning, a deputy sheriff responded to an area near the Solis residence to investigate a report "of a suspicious subject . . . connected with . . . a . . .

---

[2] In his opening brief, appellant also challenges the order requiring him to pay victim restitution. He claims the order is proper only to the extent it requires him to pay for a laptop computer that was stolen from Faletoa Tuimaualuga's residence and later pawned by appellant. The record on appeal was subsequently augmented to reflect that on February 10, 2015, the trial court held a new restitution hearing and modified its earlier order by eliminating the restitution awards appellant challenged on appeal. The court also ordered appellant to pay Tuimaualuga $900 for the laptop computer and appellant's attorney conceded that appellant owed this amount.

Appellant acknowledges in his reply brief that his claims are thus moot, yet contends that "the record of the modification of the[] orders did not include any direction to prepare an amended abstract of judgment. Therefore … requests (unless already accomplished), this Court order the Superior Court to prepare an amended abstract of judgment and transmit a certified copy to the Department of Corrections and Rehabilitation." We decline the request. (Pen. Code, § 1213, subd. (a) [trial court has duty to prepare abstract of judgment and furnish it "to the officer whose duty it is to execute the . . . judgment"]; Evid. Code, § 664 ["It is presumed that official duty has been regularly performed]; *In re Angel L.* (2008) 159 Cal.App.4th 1127, 1137 ["[The appellant has the burden of establishing error and, lacking an adequate record, a reviewing court will presume the evidence supports the judgment"].)

2

suspicious vehicle."  An SUV matching the description of the suspicious vehicle was parked on the street.  The deputy looked inside the SUV and saw a laptop computer and tools.  The deputy and his partner parked behind tall hedges and surveilled the SUV.  Several minutes later, the deputy saw appellant walking toward the SUV.  The deputy contacted appellant and asked him to identify himself and explain what he was doing there.  Appellant was sweating and had the bottom part of a blue latex glove on his wrist.  The deputy arrested appellant after determining he was under the influence of a controlled substance.

A pair of blue latex gloves were recovered from appellant's jacket pocket, and part of the same color and type of glove was found in the Solis residence.  Near the SUV, the police found a backpack containing a crowbar, bolt cutters, blue latex gloves, and a jewelry box with a piece of blue latex glove inside.  Richelle later identified the jewelry box as hers.  Another backpack found in the bushes down the street from the Solis residence contained a handgun, a cable lock, handgun magazines, a speed loader, and fishing reels.  Lorenzo verified that these items belonged to him and had been stolen from his residence. Richelle's diamond earrings, Lorenzo's wedding ring, and other pieces of jewelry were never recovered.

Richelle identified appellant in an in-field showup.  Forensic testing indicated that appellant's DNA was on the blue latex glove recovered from the Solis residence.  Appellant's urine sample tested positive for opiates and cocaine.

*Identity Theft and Second Degree Burglary*

Shortly after appellant was detained, he was asked to provide identification and produced a wallet that contained his driver's license.  The wallet also contained Shirley Albeck's license and credit cards.  Appellant initially stated that Albeck's license and credit cards belonged to his mother-in-law.  After he was unable to provide her name, he said he found the license and credit cards on the ground.  He also claimed that the SUV belonged to his mother.

3

Inside the SUV, the police found a receipt from a Ralph's grocery store in Thousand Oaks along with two empty cans of Red Bull. A Ralph's employee later verified that on October 30, 2013, someone had used one of Albeck's credit cards to purchase two cans of Red Bull and three gift cards. Appellant could also be seen on surveillance video making the purchase.

*Receipt of Stolen Property*

Shortly after appellant's arrest, the laptop computer and tools were seized from the SUV along with a cooler containing cosmetic jewelry. The next day, the police searched appellant's residence and seized luggage, two more laptop computers, a PlayStation 3, a set of keys, a backpack, a camera, and a transit tool. The police also found a pawn slip for a laptop computer. It was subsequently determined that the seized property and the "pawned" laptop computer had all been stolen during a recent string of residential burglaries in the area.

One of the computers and the PlayStation 3 were stolen from Kevin Orr's residence in Camarillo on May 17, 2013. Orr arrived home that day and discovered that the sliding glass door had been forcibly opened. The bedroom dressers had been moved and several drawers were open. In addition to the items found in appellant's possession, the thief or thieves also took Orr's badge, his wife's jewelry, a suitcase, cash, and a safe containing a gun and other items.

The transit tool was stolen from Peter Carlson's Camarillo home on or about June 28, 2013. Carlson returned home from a trip to discover that the locked sliding glass door had been forcibly opened. In addition to the transit tool, the burglar or burglars took several additional tools, a television, a shotgun and shells, a VCR, and jewelry. About a week later, Carlson noticed that someone had also broken into his shed and took a leafblower, sander, and other tools.

One of the laptop computers and the luggage found in appellant's residence were stolen from Jeffrey and Sharon Simon's Agoura Hills house on July 5, 2013. The other laptop was stolen from Jonathan Monnereau's Camarillo home in July 14, 2013.

4

Monnereau and his family returned home after a 12-day vacation to discover that someone had broken in and taken two laptop computers, a digital camera, and jewelry.

The laptop computer appellant pawned in Arizona had been stolen from Faletoa Tuimaualuga's Camarillo residence on September 7, 2013. Tuimaualuga was briefly awakened that night by an "odd noise in the house." When he got up the next morning, he discovered that his computer and several other items were missing. The garage door, which was usually closed, was propped open. That same morning, the keys later found in appellant's residence went missing from Ross Gregory's truck as it was parked in his driveway in Camarillo. Gregory also noticed that the screen for the garage door window had been removed.

The jewelry found in appellant's SUV was stolen from Martin and Eileen Hyman's Camarillo residence on September 30, 2013. Prior the burglary, a neighbor saw a man with a backpack knocking on the Hyman's front door and garage door. When Eileen's husband Martin came home, the man with a backpack "came flying out back where the garage is," jumped over a fence, and ran to an SUV that was parked on the street.[3] After the neighbor told Martin what he had seen, Martin discovered that someone had forcibly entered the house through the locked sliding glass door. The dresser drawers in the bedroom were open and the closet had been ransacked. Guns, watches, jewelry, and radios were missing.

*Burglary of the York Residence; Possession of a Controlled Substance*

On the night of December 12, 2013, Laurie York parked her car in one of the garages at her residence in Oxnard. She closed the garage door and went in the house, leaving her keys in the ignition and her purse and wallet on the front seat.

The next morning, York got up and noticed the garage door was open. Later that afternoon, York's husband looked in his car's center console and discovered

---

[3] About a week later, the neighbor was presented with a six-pack lineup that included appellant's photograph. Although the neighbor chose a different photograph, he testified that "I think I guessed who I thought it was, but I didn't really see anything but the hair."

that his house and mailbox keys were missing.  York then searched her purse and discovered that her credit card was missing along with cash and gift cards.  When York and her husband returned home later that day, a neighbor referred her to a suspicious car parked in front of the house.  York saw appellant get out of the car.  He was agitated and disheveled and claimed he was visiting a sister who lived in the neighborhood.  The police stopped appellant as he was driving away.  The house and mailbox key missing from York's husband's car were found in appellant's pockets.  The police also found prescription pills in appellant's car that had been taken from York's purse.  Appellant also had a crowbar.

## DISCUSSION

### Evidence of Uncharged Burglaries

To prove appellant was guilty of receiving stolen property, the prosecution presented evidence that the subject property had been stolen in the course of several uncharged residential burglaries in the same area over the same period time.  Over appellant's relevance and Evidence Code section 352 objections, the prosecution was allowed to question the victims regarding the details of the burglaries for the purpose of establishing appellant's knowledge that the property was stolen.

Appellant contends that evidence regarding the details of the uncharged burglaries should have been excluded under Evidence Code section 1101[4] and Evidence Code section 352.  He argues that the proffered theory of relevance "relied on an

_____

    [4] Evidence Code section 1101 provides in pertinent part:  "(a) Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion.  [¶]  (b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

assumption that [he] was the burglar of the uncharged burglaries, similar in modus operandi to the [charged burglaries], and consistent with a pattern of continuous burglary episodes culminating with the two alleged burglaries." He reasons that "the detailed evidence tending to prove [he] stole th[e] property during the commission of other uncharged burglaries established nothing more than his propensity to commit similar crimes, i.e., the York burglary." He claims the error was thus prejudicial as to his conviction of the York burglary. We are not persuaded.

Appellant's claim that the challenged evidence should have been excluded under Evidence Code section 1101 was not raised below and is forfeited. He also declined to ask the court to conduct an analysis under subdivision (b) of section 1101, or to place any limitations on the jury's consideration of the evidence. "[I]n general, the trial court is under no duty to instruct *sua sponte* on the limited admissibility of evidence of past criminal conduct." (*People v. Collie* (1981) 30 Cal.3d 43, 64.) Appellant thus cannot claim that the jury may have considered the evidence for an improper purpose.[5]

In any event, evidence regarding the details of the uncharged burglaries was not offered to prove appellant has a propensity to commit burglary, or even that he was guilty of either of the charged burglaries. Rather, the evidence as admitted was to prove he was guilty of receiving stolen property. To convict him of that crime, the jury had to find he (1) received property that had been stolen; (2) received the property with the knowledge it had been stolen; and (3) actually knew of the presence of the property. (§ 496; CALCRIM No. 1750.) Evidence that the subject property had been stolen during a burglary was plainly relevant to establish the first and second prongs. Contrary to appellant's assertion, the relevance of the evidence was not contingent upon an

---

[5] In his reply brief, appellant asserts that the jury was not given the instructions "[d]ue to the prosecutor's insistence that section 1101(b) was impertinent . . . . " Appellant, however, did not argue otherwise and merely asserted that the evidence was either irrelevant or substantially more prejudicial that probative. If appellant believed the jury might infer from the evidence that appellant had a propensity to commit burglary, he should have requested limiting instructions.

assumption that he committed the uncharged burglaries. The fact that the crimes were committed under similar circumstances during the same time period logically supports a conclusion that appellant knew where the property came from, regardless of whether he was the one who actually stole it. (Evid. Code, § 210 [defining "relevant evidence" in pertinent part as "evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action"].)

Moreover, an inference that appellant may have committed the uncharged burglaries would not have been improper. Section 496 "authorizes a conviction for receiving stolen property *even though the defendant also stole the property*, provided he has not actually been convicted of the theft." (*People v. Allen* (1999) 21 Cal.4th 846, 857.) Indeed, evidence that a defendant stole the property he or she is charged with illegally receiving "may even rise to the level of proof beyond a reasonable doubt." (*Ibid.*)

We also reject appellant's claim that the evidence of the uncharged burglaries should have been excluded under Evidence Code section 352 as substantially more prejudicial than probative. "The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. '[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying Evidence Code section 352, "prejudicial" is not synonymous with "damaging."' [Citation.]" (*People v. Karis* (1988) 46 Cal.3d 612, 638.) The evidence regarding the uncharged burglaries was highly relevant to prove appellant's knowledge that he was in possession of stolen property. Any potential for prejudice in admitting the evidence did not rise to the level necessary for exclusion under Evidence Code section 352.

We also conclude that any error in admitting the challenged evidence was harmless. As we have noted, the challenged evidence was not offered to prove appellant was guilty of the York burglary. Moreover, the evidence that appellant committed the York burglary was strong. Although the prosecutor suggested that appellant committed the uncharged burglaries and argued that his possession of the stolen property indicated he was "a professional burglar," appellant did not object to these comments or request curative instructions. In any event, the jury was instructed that the attorneys' comments were not evidence and the comments at issue here were brief. Any error in admitting the challenged evidence was harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *Chapman v. California* (1967) 386 U.S. 18, 24.)

*Sufficiency of the Evidence - Identity Theft*

Appellant claims the evidence is insufficient to support his conviction of identity theft. In reviewing claims of insufficient evidence, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (2015) 60 Cal.4th 966, 988; *People v. Jackson* (2014) 58 Cal.4th 724, 749.) We do not redetermine the weight of the evidence or the credibility of witnesses. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Ibid.*)

To convict appellant of identity theft, the jury had to find he (1) willfully obtained Shirley Albeck's credit card; (2) used it for an unlawful purpose; and (3) did so without her consent. (§ 530.5, subd. (a); *People v. Barba* (2012) 211 Cal.App.4th 214, 223.) Appellant contends the evidence is insufficient to prove the first prong because he claimed that he found the credit card on the ground. Even if the jury had to take appellant at his word on this (and it did not), picking an item up from the ground is a "willful" act. As the jury was instructed, "Someone commits an act *willfully* when he or

9

she does it willingly or on purpose." (CALCRIM No. 2040.) There is nothing to suggest, must less compel the conclusion, that appellant picked it up "by accident." In light of the evidence, the jury could also infer that he did not have Albecks' consent to take possession of the credit card. Contrary to appellant's claim, the prosecution did not have to affirmatively prove that Albeck did not give him permission to possess and use the card. Moreover, appellant's own statements and the circumstantial evidence of his possession and use of the card plainly support the finding that he obtained Albeck's credit card willfully for purposes of section 530.5.

*Custody Credit*

Appellant was awarded 507 days of presentence custody credit, consisting of 439 days of actual custody credit and 66 days of good conduct credit. The court calculated the credits based upon the probation report, which states that appellant was in custody in the case from October 31, 2013, until December 2, 2013, and again from January 1, 2014, until his sentencing on February 10, 2015.

Appellant claims he is entitled to an additional 19 days of credit. He correctly notes that he was back in custody in the case on December 13, 2013, rather than January 1, 2014. He also correctly notes that the award of 507 days is the result of a mathematical error (i.e., 439 + 66 = 505). Appellant contends he is actually entitled to 526 days of credit, consisting of 458 days of actual custody credit plus 68 days of good conduct credit (i.e., 15 percent of 458). (§ 2933.1, subd. (a).)

The People not only concede the error, but claim that appellant is actually entitled to an additional 22 days of credit rather than 19. In his reply brief, however, appellant correctly points out that the People erroneously calculated 460 days of actual custody credit, rather than 458 days, which led to an erroneous calculation of 69 days of conduct credit (i.e., 15 percent of 460).

Appellant's calculation is correct. The period from October 31, 2013, through December 2, 2013, is 33 days, and the period from December 2013 through February 10, 2015, is 425 days. He is thus entitled to 458 days of actual custody credit,

10

plus 68 days of conduct credit, for a total of 526 days.  We shall order the judgment modified accordingly.

DISPOSITION

The judgment is modified to reflect that appellant is entitled to a total of 526 days of presentence custody credit, consisting of 458 days actual custody credit and 68 days of conduct credit.  The superior court clerk shall prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.  As so modified, the judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.


11

Ryan J. Wright, Judge

Superior Court County of Ventura

_____

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael C. Keller and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.