Filed 12/11/24  P. v. Anderson CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LEMUEL ARLINGTON ANDERSON,<br><br>    Defendant and Appellant. | 2d Crim. No. B333330<br>(Super. Ct. Nos. BA511952,<br>BA516342)<br>(Los Angeles County) |

Lemuel Arlington Anderson appeals the judgment after a jury convicted him of three counts of procuring and offering false or forged instruments (Pen. Code,[1] § 115, subd. (a)).  Anderson also admitted a prior "strike" allegation (§§ 667, subds. (b)-(j), 1170.12), which the trial court dismissed.  The trial court suspended imposition of sentence and placed Anderson on two years' probation.

---

[1] Further unspecified statutory references are to the Penal Code.

Anderson contends his convictions should be reversed because there was insufficient evidence that he knowingly committed the offenses. We affirm.

FACTUAL AND PROCEDURAL HISTORY

This case involves three properties in Los Angeles: the 85th Street property, the 104th Street property, and the 116th Street property.

*Prosecution evidence*

Derek Shepherd owned the 85th Street property with his wife since 2005. They purchased the property at the trustee's sale, lived there from 2005 to 2018, and then used it as rental property. Shepherd did not know Anderson. He never rented the property to Anderson or to a man named Robert Latham, Jr. (Robert Latham), who Anderson said was his uncle. Shepherd said Anderson and Robert Latham never lived there. The prosecution presented a copy of a grant deed, which showed the transfer of the property from Robert Latham to Anderson. Shepherd testified that he never gave them permission to record any documents against the property.

Luz Rodriguez lived at the 104th Street property since she and her ex-husband purchased it in 1997. The prosecution presented a copy of a grant deed, which showed the transfer of the property from Robert Latham to Anderson. Rodriguez said she did not know Anderson or Robert Latham, nor did they have permission to record any documents against her property.

Los Angeles County Sheriff's Detective Christopher Derry testified that Alice M. O'Field quitclaimed the 104th Street property to Lee T. Pate in 1993. He also testified that Pate transferred the property to Willie Latham, a single man, and Pate as tenants in common in March 1996. A trustee's deed upon

2

sale was recorded in October 1996, following Pate's default on the loan and a foreclosure auction. A grant deed was recorded in July 1997, transferring the property from Benjamin Hernandez to Luz Rodriguez and her ex-husband. Anderson recorded a grant deed on the property in December 2021, transferring ownership of the 104th Street property from Robert Latham to Anderson. Latham's signature on the deed was notarized in November 2021.

Walter Latham lived at the 116th Street property for about 52 years with his wife, Willie Latham,[2] and their son. The prosecution showed him a grant deed transferring the property from Anderson to his cousin, David Smith. Walter Latham testified that he did not know Anderson or David Smith. He also denied giving them permission to record any documents against the property.

Detective Derry testified there was a joint tenancy grant deed recorded on the 116th Street property in April 1972, transferring ownership of the property from a man named Luis Machado to Walter and Willie Latham, as husband and wife. There was a trust transfer deed recorded in August 2010, transferring ownership from Walter and Willie Latham to their

---

[2] The Willie Latham associated with the 104th Street property is a male and the Willie Latham associated with the 116th Street property is a female. The record does not reflect there was any relationship between the two. And neither Walter or Willie Latham, husband and wife, are related to Robert Latham.

living trust. O'Field was not on the chain of title.[3] Trevor Wiltz, a notary public, testified that he notarized a grant deed on the 116th Street property for Anderson in October 2022 at a UPS store in Culver City.

Detective Derry investigated the properties. Wild deeds involving Anderson were recorded on all three properties. A wild deed is a deed recorded outside the chain of title. The jury was presented with a surveillance video from December 2021 showing Anderson in line at the Los Angeles County Registrar Recorder's Office to record documents on the 85th and 104th Street properties. The jury also saw surveillance video from October 2022 showing a man recording a document on the 116th Street property. The prosecution asserted the man was Anderson. The defense asserted David Smith recorded the document.

In February 2022, Detective Derry interviewed Anderson to discuss the 104th Street property. The jury was presented with an audio recording and transcript of the interview. During the interview, Anderson said, "[T]here's nothing to be said anymore man. I filed . . . that planning to get the fake deeds off my property." Anderson also said, "[Y]a'll let these people go in my house. I put locks on it. Ya'll let them people go right back up in there man. . . . They been in my people's houses for years. Years and years." Derry showed Anderson a copy of the grant deed Anderson recorded on the 104th Street property. Derry asked, "I've got some questions because there's a dispute over this property. . . . a couple questions I have is Robert Latham, the person that signed this, who is this man to you?" Anderson cursed at Derry and replied, "Robert Jr.'s my motherfucking

[3] Detective Derry did not retrieve records prior to 1985 for any of the three properties.

4

uncle.  That's his Goddamn mama's house.  He signed the shit over to me.  Enough fucking said!"  Anderson ended the interview.

Anderson later called Detective Derry.  Anderson told Derry that Robert Latham was his mother's brother.  Derry asked Anderson who prepared the deed transferring the property from Robert Latham to himself, and Anderson replied that it was his attorney.  When asked for the name of his attorney, Anderson said he would call Derry "right back" with the name.  Anderson never called back.

The Shepherds filed a police report with respect to the 85th Street property, and two other detectives interviewed Anderson.  The jury was presented with the audio and transcript of that interview.  During the interview, Anderson said that Alice O'Field was his grandmother.  He said the Shepherds "think that my grandmother's property belongs to them, and it doesn't."  The detective asked whether he was present when the grant deed signed by Robert Latham was notarized.  Anderson replied that he took his uncle to a UPS store to get the deed notarized.  Anderson also said he got the grant deed from an attorney and that he "can't say no more, other than . . . this is all the real-deal paperwork here to my grandmama's place."  When the detective asked who the attorney was, Anderson replied, "I rather not even speak on nothing because my attorney told me not to. . . . I will contact him and have him get ahold of you guys and go from there."

Anderson also said that when his grandmother passed away in 1996, she signed over the 85th Street property to his uncle, and he signed it over to Anderson.  He said that "squatters" moved onto the property, claimed it was theirs, and

made up fake deeds.  Anderson said he filed a complaint with the Department of Consumer and Business Affairs against the Shepherds.  Anderson also said he put locks on the house about a month prior, but the locks were later removed.  When asked who stayed at the property after his grandmother passed away, Anderson said he did not know and that he was in Wisconsin at that time.  When asked if Anderson visited the property after his grandmother died, his response was, "What does that have to do with this here?"  And when asked why he and his uncle did not transfer the 85th Street property after his grandmother's death, Anderson replied, "What the fuck—I mean, excuse me.  What can he do?  He can't do nothing."  He also said, "I don't know nothing about none of this stuff.  I'm new to everything. . . . I'm doing what I can."

*Defense evidence*

Anderson testified on his own behalf.  He moved from Wisconsin to Los Angeles in September 2021 after he heard his uncle Robert Latham's properties were available to him by conveyance.  He testified that Alice O'Field was his grandmother, and Robert and Willie Latham were O'Field's sons and Anderson's uncles.

Anderson testified that O'Field, his uncle Willie Latham, and Lee T. Pate owned the 104th Street property.  He said that after O'Field and Willie Latham died in 1996 and 1997, respectively, the property remained empty, but still belonged to his family.  He did not know Luz Rodriguez, who claimed ownership of the property.  He also did not know Rodriguez recorded a deed on the property.  He said that Robert Latham and Samuel Henderson, a family friend, told him that the people living in the property had "fraudulent documents."  Anderson had

6

Blair Earkman, a bookkeeper, draft a deed to the property. Anderson got the deed notarized, and then recorded it in December 2021. Anderson also put bills in his name, obtained homeowner's insurance on the property, and paid utilities. He also attempted to turn the property into a business and had Spectrum drop off cable boxes and a business phone. At the time of trial, Anderson believed that he legally owned the 104th Street property and that the other deeds on the property were fraudulent. He denied that Rodriguez bought the property and claimed it never went into foreclosure.

Anderson also testified the 85th Street property was O'Field's home. He said she bought the property in 1975 and that the Shepherds' documents were fraudulent. Robert Latham and Henderson told him there were issues with ownership of this property. Anderson recorded the deed on this property around the same time as the 104th Street property. He tried to clear the ownership issue by putting bills in his name and obtaining homeowner's insurance on the property. He also filed a "criminal complaint" in 2021 regarding the 85th Street and 104th Street properties. He alleged that a court ordered the properties be granted to him, but the current owners continued to dispute ownership. He also filed a complaint with consumer affairs. He had Earkman prepare a deed transferring the 85th Street property from Robert Latham to himself. Anderson believed he legally owned the property.

Blair Earkman testified that he was the bookkeeper who prepared the grant deeds for Anderson on the 85th and 104th Street properties. The grant deeds transferred the properties from Robert Latham to Anderson.

Anderson testified that his uncle Willie Latham owned the 116th Street property and that it was transferred from Lee T. Pate to Willie Latham in the "late 80's, early 90's." He said his uncle did not sell the property before he passed away and that Walter Latham filed a fraudulent deed on the property. He testified that Walter Latham and his wife, Willie Latham, were not family, and he did not know a female named Willie Latham. Henderson informed Anderson about the fraudulent deed about six months after he recorded the deeds on the other properties. Anderson had Earkman prepare a deed transferring the property from Anderson to David Smith (Anderson's cousin). He said he transferred the deed to Smith because the City of Norwalk refused to let Anderson record the property in his own name. He had the property conveyed to Smith because he wanted to get his cousin out from Skid Row. The deed was notarized and recorded in October 2022. Anderson and Henderson drove Smith to the county recorder's office, and Smith forged Anderson's signature on the recorded document. At the time of trial, Anderson believed Smith legally owned the property.

DISCUSSION

Anderson contends there was insufficient evidence to support that he knowingly filed false or fraudulent documents. We are not persuaded.

Under section 115, subdivision (a), a person who "knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within the state . . . is guilty of a felony."

We review sufficiency of evidence challenges to the judgment of conviction for substantial evidence. We review the whole record "in the light most favorable to the judgment to

8

determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Albillar* (2010) 51 Cal.4th 47, 60 (*Albillar*).)  If the evidence reasonably justifies the trier of fact's finding, we do not reverse even if the evidence might also reasonably justify a contrary finding.  (*Ibid*.)  We do not reweigh evidence.  The credibility of witnesses and the weight to be accorded to the evidence are exclusively within the province of the trier of fact.  (*Ibid*.)

Here, substantial evidence supports the jury's finding that Anderson *knowingly* filed false or fraudulent documents.  The prosecution presented evidence of the deeds recorded by Anderson and the surveillance videos of the deeds being recorded. The current owners of the properties testified that they did not know Anderson and that he never had permission to record documents on their properties.  Detective Derry also testified as to the chain of title on the three properties.  His testimony showed that Anderson's deeds were "wild deeds," refuting Anderson's testimony that the properties, including the 104th Street property, still belonged to his family and that the other deeds from the current owners were fraudulent.

The jury also considered evidence of Detective Derry's interviews with Anderson, in which Anderson said an attorney prepared the deeds.  Anderson could not provide the name of the attorney and never called Derry back with the name of the attorney.  It was later revealed that Earkman, a bookkeeper, prepared the deeds.  The jury also considered Anderson's interview with two other detectives, in which Anderson again could not provide the name of the attorney who prepared the

9

deeds.  When asked about the deeds, Anderson said he would "rather not . . . speak on nothing" because his attorney told him not to, and said he would have his attorney contact the detectives.  The record does not show this happened.  Anderson also could not answer why the 85th Street property transferred to him in 2021 and not in 1996 after his grandmother's death.  The jury could infer from Anderson's evasiveness and inconsistent testimony that he knew of his wrongdoing.

Anderson also testified that the City of Norwalk refused to let Anderson record the property in his own name.  Consequently, he had Smith record a deed transferring the 116th Street property from Anderson to Smith.  He also testified that Smith forged Anderson's signature on the deed.  A jury could reasonably infer from this testimony that Anderson knew the deed to the 116th Street property was false and fraudulent when he recorded it.

Anderson contends the evidence supports that he did not know the deeds he recorded were false.  He points to evidence that he consistently maintained his family still owned the properties and that he had no awareness of the foreclosures and sales of the properties.  But on a substantial evidence review, we construe the evidence in the light most favorable to the prosecution—not the other way around.  (*Albillar*, *supra*, 51 Cal.4th at p. 60.)

The jury was properly instructed on the elements of the crime and mistake of fact, including that they must not find Anderson guilty if they had "reasonable doubt about whether [he] had the mental state required for filing a false document."  We presume the jury understood and followed the instructions.  (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 107.)  The

10

jury evidently did not find Anderson's testimony credible and rejected his defense. We will not disturb the jury's credibility assessments and weighing of evidence.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

                            BALTODANO, J.


We concur:


            YEGAN, Acting P. J.



            CODY, J.

11

Craig Richman, Judge

Superior Court County of Los Angeles

_____

Paul Stubb Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Jonathan J. Kline and Herbert S. Tetef, Deputy Attorneys General, for Plaintiff and Respondent.