Filed 1/6/25  P. v. Daniels CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

MARK ANTHONY DANIELS,

    Defendant and Appellant.

E082412

(Super.Ct.No. 23PA000334)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Donna G. Garza, Judge.  Affirmed.

Stephanie M. Adraktas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Liz Sulaiman, Deputy Attorneys General, for Plaintiff and Respondent.

Mark Daniels appeals from an order revoking his parole and remanding him to the custody of the California Department of Corrections and Rehabilitation (CDCR) for violating the conditions of his parole. We affirm.

BACKGROUND

In 2013, Daniels was convicted of oral copulation of a child under the age of 14 and sentenced to 12 years in prison. (Pen. Code, § 288a, subd. (c)(1); unlabeled statutory citations refer to this code.) On January 4, 2023, Daniels was released from custody with a parole term set to expire on July 5, 2043. As part of his parole conditions, he was required to comply with the registration and reporting requirements of the Sex Offender Registration Act (the Act) (§ 290 et seq.) and to participate in continuous electronic monitoring by wearing a Global Positioning System (GPS) device.

On the morning of March 20, 2023, Daniels's parole agent, Timothy Buckland, received a notification that Daniels's GPS device had been tampered with. When Buckland was unable to locate Daniels at his residence or at the last location that the GPS device had recorded, Buckland applied for a warrant for Daniels's arrest, which the court issued that same day. Five months later, on August 22, 2023, Daniels was arrested in Douglas County, Oregon, extradited to California on September 6, and arrested for absconding and violating his parole conditions. On September 8, parole agent Bryan Snell interviewed Daniels regarding the alleged violations. Daniels told Snell that he was getting "sex played" at his residence and "couldn't take it anymore," so he took the bus to Oregon (where his cousin lived). Daniels said he used scissors to cut the strap of his GPS

2

device and left the device on the bus. Daniels reported that he had been transient during his stay in Oregon and had camped by a lake.

On September 13, 2023, Snell filed a petition to revoke Daniels's parole, alleging that Daniels violated his parole conditions and was subject to the mandatory remand provision in section 3000.08, subdivision (h).[1] The parole violation report that Snell authored and submitted with the petition charged Daniels with three parole violations: absconding, tampering with his GPS device, and violating the Act. The report summarized Daniels's conduct, Buckland's investigation, and Daniels's statements to Snell. The report also noted that in February 2023, Daniels sustained a parole violation for failing to attend a sex offender treatment program and was given a verbal reprimand.

Snell attached to the report the notices of parole conditions and sex offender registration and reporting requirements that Daniels had signed before his release. As relevant here, Daniels acknowledged that he was required to report any change of his residence to his parole agent, refrain from violating any laws, participate in continuous electronic monitoring, refrain from tampering with his GPS device, and comply with all registration and reporting requirements under the Act. Specifically, Daniels acknowledged that the Act required him to notify his last registering agency if he changed his registered address to a new address or to transient status "anywhere inside or outside of the state," as required by section 290.013. Snell attached a printout of the California

---

[1]     The mandatory remand provision applies to Daniels because he committed the qualifying offense of oral copulation of a child under the age of 14. (§§ 3000, subd. (b), 3000.08, subd. (h).)

3

Sex and Arson Registry (CSAR) webpage for Daniels, which showed that there were no registration or reporting entries after Daniels's initial registration of his residence on January 25, 2023.

The court held the parole revocation hearing on October 19, 2023. Buckland testified about his role in the GPS unit of CDCR's Division of Adult Parole Operations (DAPO). He described how master tamper alerts work and the investigation he conducted after receiving such an alert from Daniels's device on March 20, 2023. Snell testified about his investigation into Daniels's failure to provide notice of his change of residence. Snell explained that he had searched CSAR as well as Daniels's parolee file within DAPO's electronic database (called the Strategic Offender Management System or "SOMS"). Snell said that there was no indication in Daniels's SOMS file that Daniels had attempted to contact anyone from DAPO when he was at large. Snell also said that Daniels's CSAR page contained no entries after Daniels went missing on March 20, 2023. On cross-examination, defense counsel had no questions for Buckland and only one for Snell. Counsel asked Snell whether DAPO "consider[ed] any kind of remedial sanctions short of initiating parole revocation proceedings," and Snell said that they would have if Daniels were not subject to mandatory remand. In closing argument, defense counsel argued that the court should exercise its discretion to "consider lesser sanctions short of revocation."

The court found that Daniels violated the conditions of his parole by tampering with his GPS device and by failing to comply with the Act. The court revoked Daniels's parole and remanded him to the custody of CDCR for future parole consideration.

4

Daniels raises two challenges to the trial court's finding that he failed to comply with the Act. Both lack merit.

First, Daniels argues that the trial court abused its discretion by admitting Snell's testimony about CSAR. Citing *People v. Hawkins* (2002) 98 Cal.App.4th 1428 (*Hawkins*), Daniels argues that CSAR constitutes "computer-generated information" for which an adequate foundation must be established before the information may be admitted. According to Daniels, the court should have excluded Snell's testimony about CSAR because the People failed to present evidence that the database was "was operating properly at the time the data was generated."

*Hawkins* is distinguishable because it concerned a criminal trial, and parole revocation hearings are subject to more "relaxed" rules of evidence. (*People v. Brown* (1989) 215 Cal.App.3d 452, 454 ["[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations"]; *People v. Monette* (1994) 25 Cal.App.4th 1572, 1575 [noting that at revocation proceedings "[m]ore lenient rules of evidence apply than at criminal trials"].) Daniels cites no authority for the proposition that the foundation requirement at issue in *Hawkins* applies in parole revocation hearings. But even if it did, we would conclude that there was adequate foundation for admitting Snell's testimony about what he found in the database. CSAR is the state's official sex offender registration database and is run by the Department of Justice pursuant to the Legislature's mandate. Section 290.012 of the Act requires registering agencies to "submit

5

registrations . . . directly into the Department of Justice California Sex and Arson Registry (CSAR)." (Pen. Code, § 290.012, subd. (d).) We presume that such official duties have been discharged unless there is evidence to the contrary, and Daniels did not present any. (Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"]; see *People v. Martinez* (2000) 22 Cal.4th 106, 125 [noting that California courts have applied the presumption in trials to conclude that proffered evidence satisfies "foundational requirements"].)

Daniels's second challenge to the court's finding is that the record does not contain substantial evidence that he failed to comply with the Act. We disagree. A parole violation must be proved by a preponderance of the evidence. (§ 3044, subd. (a)(5); *In re Miller* (2006) 145 Cal.App.4th 1228, 1235.) We review an order revoking parole for abuse of discretion and review the court's factual findings for substantial evidence. (*People v. Butcher* (2016) 247 Cal.App.4th 310, 318.) In considering a challenge to the sufficiency of the evidence, "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty," and we "presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence." (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.) We do not reweigh conflicting evidence or determine credibility on appeal. (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 200; *People v. Saldana* (1975) 47 Cal.App.3d 954, 958.)

6

Section 290.013 of the Act requires registrants to notify their initial registering agency of a change in their residence status, whether the registrant has moved to a new residence or become transient. That provision states: "A person who was last registered at a residence address pursuant to the Act who changes his or her residence address, whether within the jurisdiction in which he or she is currently registered or to a new jurisdiction inside or outside the state, shall, in person, within five working days of the move, inform the law enforcement agency or agencies with which he or she last registered of the move, the new address or transient location, if known, and any plans he or she has to return to California." (§ 290.013, subd. (a).)

The record contains sufficient evidence to support a finding that Daniels violated that provision. The People presented evidence that he was arrested in Oregon after being at large and failing to contact DAPO for five months. Moreover, according to the parole violation report that was submitted with the revocation petition, Daniels admitted to Snell that he had been in Oregon for the entire time he had been missing. The trial court was statutorily required to consider that report in ruling on the People's petition (§ 3000.08, subd. (f)), and Daniels did not object to anything in the report. From all of that evidence, the trial court could reasonably conclude that Daniels had been in Oregon since the time he went missing and that his move triggered the notification requirement of section 290.013.

Daniels contends that even if there were sufficient evidence that the notification requirement was triggered, the People did not prove that he failed to comply with it. He points out that section 290.013 gave him "five working days" to provide notice, and he

7

argues that Snell's testimony showed that Snell checked only whether Daniels had registered "as of March 20," not as of March 25, 2023. Daniels interprets the testimony too narrowly. By saying that there were no entries for Daniels "as of the date that he left the house, as of 3/20," Snell was not conveying that the only date he checked in CSAR was March 20, 2023. Such an interpretation is unreasonable because it ignores how CSAR operates. When Snell searched for Daniels in CSAR, he retrieved a webpage or file that contained Daniels's entire registration history. For Snell's testimony to mean what Daniels claims it means, Snell would have to have purposefully ignored portions of that page to search for one date only, and it is unreasonable to think that he did so. Reasonably interpreted, Snell's testimony conveyed that Daniels's CSAR webpage showed no entries from March 20 onward, and that is what the printout of Daniels's CSAR page that was submitted with the petition shows. There are no entries after the initial registration entry from January 2023.

Relying on *People v. Armas* (2011) 191 Cal.App.4th 1173 and *People v. Wallace* (2009) 176 Cal.App.4th 1088, Daniels argues that the People were "required to provide evidence that [he] had moved to a new location *within* California" in order to prove a violation of the Act. But *Armas* and *Wallace* involved a different provision of the Act, namely, the requirement to register a new address under section 290, subdivision (b) (formerly section 290, subdivision (a)(1)(A)). (See *Armas*, at p. 1183; *Wallace*, at p. 1100.) That registration requirement has been interpreted to apply only to registrants residing in California, but section 290.013's notification requirement applies regardless of

8

"whether [the move is] within the jurisdiction in which [the registrant] is currently registered or to a new jurisdiction inside or outside the state."  (§ 290.013, subd. (a).)

For all of these reasons, we conclude that substantial evidence supports the trial court's finding that Daniels violated his parole conditions by failing to comply with the Act.  And because Daniels is subject to mandatory remand to CDCR upon the finding of a single violation, we need not address his challenge to the tampering violation. (§ 3000.08, subds. (f), (h).)

DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


MENETREZ
J.

We concur:


RAMIREZ
P. J.


MILLER
J.

9