Filed 3/26/25  P. v. Vasquez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100247 |
| Plaintiff and Respondent, | (Super. Ct. No. 95F09680) |
| v. | |
| RICARDO VASQUEZ, | |
| Defendant and Appellant. | |

Defendant Ricardo Vasquez appeals the court's postconviction order denying his petition for resentencing under former Penal Code section 1170.95 (now section 1172.6).[1]  Following an evidentiary hearing, the court found beyond a reasonable doubt

---

[1] Undesignated statutory references are to the Penal Code.

Effective June 30, 2022, after defendant filed his petition, the Legislature renumbered section 1170.95 to section 1172.6 without substantive change.  (Stats. 2022, ch. 58, § 10.) We will refer to the section where possible by its new numbering.

1

that defendant was a major participant in a felony who acted with reckless indifference to human life. On appeal defendant claims sufficient evidence does not support the court's findings. Disagreeing, we will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 1995, the People charged defendant with the murder (§ 187, subd. (a)) of Srisomhon Phomkhai and the attempted murder of B.S. (§§ 664, 187, subd. (a)), as well as robbery (§ 211).[2] The information alleged defendant personally used a knife in the commission of both the murder and attempted murder counts. (§ 12022, subd. (b).) It further alleged the special circumstance that defendant committed both the murder and attempted murder while engaged in a robbery. (§ 190.2, subd. (a)(17).)

At trial, B.S. testified that he and Phomkhai drove to Sacramento from San Jose to visit a friend. When they found the friend was not home, they left the friend's home and happened to meet Tammy Acampo and Angela Garcia. B.S. stopped to talk to them and Acampo and Garcia asked for a ride. The group stopped at a house, bought some drugs, and Phomkhai and the women took the drugs.

The group then drove to another house in Sacramento. Garcia went inside while Acampo, Phomkhai, and B.S. waited in the car. Shortly thereafter, a brown car carrying defendant, Jay Carmichael, and Bernardo Araiza pulled behind the car. Garcia testified that Carmichael got out of the brown car, approached her, and asked if she wanted to purchase drugs. Phomkhai took a $50 bill from his wallet and gave it to Acampo, who handed it to defendant. Defendant gave her a baggie containing drugs.

According to B.S., Acampo told Phomkhai that defendant did not have change for a $50 bill. The parties drove their cars to a nearby gas station and Garcia went inside to

---

[2] To protect their privacy, we refer to the surviving victim by his initials. (Cal. Rules of Court, rule 8.90, subd. (b)(4), (10).)

2

get change. At the gas station, B.S. became apprehensive about the situation and told Phomkhai not to worry about the money.

Acampo left the gas station and drove the car to a park. Defendant, Carmichael, and Araiza followed in the brown car. Acampo stopped in a dark area, but B.S. said he encouraged her to keep driving. She drove out of the park and passed a well-lighted shopping center. At one point, Phomkhai grabbed at the steering wheel and yelled at Acampo to stop the car, but Acampo continued to drive.

According to B.S., Acampo finally stopped the car, and the brown car stopped next to them. Simultaneously, defendant and Araiza got out of the brown car. Araiza approached the passenger side, grabbed Phomkhai by the neck, and repeatedly stabbed him. Defendant moved to the driver's side window, reached into the back seat where B.S. was sitting, and stabbed him in his arms, face, and head. Garcia, who was sitting next to B.S. in the back seat, testified she put her feet against him to prevent him from escaping. She hit B.S. over the head with a soda bottle and he lost consciousness.

After the attack, Garcia said she and Acampo left the scene in the brown car with defendant, Araiza, and Carmichael. Garcia testified she saw defendant hand a knife to Araiza who threw it out the window of the brown car as they fled. She also heard Carmichael say that Phomkhai only had one dollar in his wallet.

When B.S. regained consciousness, he testified that everyone was gone. He could not find Phomkhai, so he drove around until he spotted a police officer. Phomkhai's body was found the next morning.

The jury convicted defendant of first degree murder (§§ 187/189), assault with a deadly weapon (§ 245, subd. (a)(1)), second degree robbery (§ 211), and attempted robbery (§§ 664/211). The jury also found true that defendant used a knife (§ 12022, subd. (b)) and the special circumstance that the murder occurred during a robbery (§ 190.2, subd. (a)(17)). The court sentenced defendant to life without possibility of parole.

3

Later that year, defendant appealed his conviction and this court affirmed the judgment. (*People v. Vasquez* (Oct. 16, 1998, C026759) [nonpub. opn.] (*Vasquez I*).)[3]

In 2019, defendant filed a petition for resentencing under former section 1170.95. The trial court considered defendant's petition, the information, jury instructions, and verdict forms. The court denied the petition at the prima facie stage, finding defendant ineligible as a matter of law because of the jury's special circumstance finding and because this court's appellate opinion established defendant was a major participant who acted with reckless indifference to human life under *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). Defendant appealed and during the pendency of that appeal, our Supreme Court decided *People v. Strong* (2022) 13 Cal.5th 698, which held that jury findings issued before its decisions in *Banks* and *Clark* "do not preclude a defendant from making out a prima facie case for relief under Senate Bill [No.] 1437." (*Id.* at p. 710.) In light of *Strong*, we reversed the trial court's order denying defendant's petition at the prima facie stage and remanded for further proceedings. (*Vasquez II, supra,* C094256).)

On remand, the trial court issued an order to show cause and held a hearing. It considered the pleadings and the trial transcript, to which defendant did not object. The court found defendant was a major participant in the robbery, analyzing the factors in *Banks*. It found "overwhelming" circumstantial evidence that defendant planned the robbery, including that defendant and the other codefendants worked in tandem with Acampo and Garcia to lure the victims to the scene of the crime, planned to rob the victims with knives, and that defendant and Araiza simultaneously attacked the victims.

---

[3] On the court's own motion, we take judicial notice of this court's unpublished opinions in defendant's appeal of the original judgment *Vasquez I, supra,* C026759 and his subsequent appeal *People v. Vasquez* (Nov. 16, 2022, C094256) (nonpub. opn.) (*Vasquez II*). (Evid. Code, §§ 451, subd. (a), 452, subd. (d), 459, subd. (a).)

The court also found defendant used a knife to attack the victim, was aware of the particular dangers posed by the robbery because he used a knife to stab B.S., was present during the crime, could have prevented the murder, and that after the attack defendant handed a knife to Araiza to discard.

The trial court, citing the *Clark* factors, found defendant acted with reckless indifference to human life because defendant knew knives were going to be used in the robbery; was present during the crime; took no action to stop the robbery or aid the victims; preplanned the robbery; at a minimum, had constructive knowledge of the likelihood of killing because the codefendants simultaneously stabbed and attacked the victims; and defendant made no efforts to minimize the risk of violence.

The trial court also considered defendant's age at the time of the robbery and found there was no evidence that defendant's youth caused him to act with reckless impulsivity or that defendant was swept up in circumstances beyond his control. Accordingly, the court denied defendant's petition.

DISCUSSION

Defendant claims that the trial court erred in denying his petition, arguing the evidence presented was insufficient to establish that he was a major participant in the robbery who acted with reckless indifference to human life. The People assert substantial evidence supports the court's ruling. The People have the better argument.

In 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437) was enacted to "amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill No. 1437 achieves these goals by amending section 188 to require that a principal act with express or implied malice (§ 188, as amended by Stats. 2018, ch. 1015, § 2), and by amending section 189 to state that a person can be liable for

5

felony murder only if: (1) the "person was the actual killer"; (2) the person, with an intent to kill, was an aider or abettor "in the commission of murder in the first degree"; or (3) the "person was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e), as amended by Stats. 2018, ch. 1015, § 3.)

Senate Bill No. 1437 also added former section 1170.95 to provide the resentencing petition process for a "person convicted of felony murder or murder under a natural and probable consequences theory." (Former § 1170.95, subd. (a).) If a trial court finds a petitioner has made a prima facie case for relief, it shall issue an order to show cause and hold an evidentiary hearing on the petition. (§ 1172.6, subds. (c), (d).) At the evidentiary hearing, it is the prosecutor's burden "to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189." (§ 1172.6, subd. (d)(3).) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid.*)

Under Senate Bill No. 1437, a defendant is entitled to be resentenced if he was not the actual killer, did not have the intent to kill, nor was a major participant who acted with reckless indifference to human life. The trial court found beyond a reasonable doubt defendant was both (1) a major participant in the robbery and (2) acted with reckless indifference to human life. We analyze both elements separately and find substantial evidence for each.

" 'When reviewing a challenge to the sufficiency of the evidence, we ask " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " [Citation.] Because the sufficiency of the evidence is ultimately a legal question, we must examine the record independently for " 'substantial evidence — that is, evidence which is reasonable, credible, and of solid value' " that would support a

6

finding beyond a reasonable doubt.' " (*People v. Navarro* (2021) 12 Cal.5th 285, 302.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

For a defendant to be a "major participant," his "personal involvement must be substantial, greater than the actions of an ordinary aider and abettor to an ordinary felony murder." (*Banks*, *supra*, 61 Cal.4th at p. 802.) Our Supreme Court discerned several factors relevant in determining whether a defendant was a major participant in the underlying felony: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Id.* at p. 803, fn. omitted.) The court clarified, "No one of these considerations is necessary, nor is any one of them necessarily sufficient. All may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.' " (*Ibid.*)

We conclude substantial evidence demonstrates defendant was a major participant in the robbery. Defendant acknowledges there is evidence of a planned robbery. Based on the evidence, it is reasonable to infer that defendant was involved in the planning because he and his accomplices followed the victims, defendant worked in tandem with Acampo and Garcia to lure the victims to the crime scene, and defendant and Araiza attacked the victims simultaneously. Defendant also concedes he used a knife to stab

7

B.S. and that he could "be deemed to have the knowledge" of the risk of using a knife in a robbery.

Because defendant and Araiza attacked the victims simultaneously in the car, substantial evidence demonstrates defendant could have prevented Phomkhai's murder or made it less likely. After the attack, defendant left both victims for dead and gave his knife to Araiza to discard. This indicates defendant was much more than a mere getaway driver. Defendant participated in the planning and execution of the robbery that resulted in the death of Phomkhai. Substantial evidence supports the court's finding that defendant was a major participant.

The requirements of being a major participant and acting with reckless indifference " 'significantly overlap . . . in general, for the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life.' " (*Clark*, *supra*, 63 Cal.4th at p. 615.) Regarding the mental component of culpability, what matters is "whether a defendant has ' "knowingly engag[ed] in criminal activities known to carry a grave risk of death." ' " (*Banks*, *supra*, 61 Cal.4th at p. 801.) Participation in a " 'garden-variety' " armed robbery, by itself, is not enough to establish reckless indifference. (*Clark*, at p. 617, fn. 74.) Instead, "[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed, demonstrating reckless indifference to the significant risk of death his or her actions create." (*Banks*, at p. 801.)

Reckless indifference has a subjective and an objective element. (*Clark*, *supra*, 63 Cal.4th at p. 617.) As to the subjective element, "[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed," and he or she must consciously disregard "the significant risk of death his or her actions create." (*Banks*, *supra*, 61 Cal.4th at p. 801; see *Clark*, at p. 617.) As to the objective element, " '[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her],

8

its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.' " (*Clark*, at p. 617, quoting Model Pen. Code, § 2.02, subd. (2)(c).) "Awareness of no more than the foreseeable risk of death inherent in any armed crime is insufficient" to establish reckless indifference to human life; "only knowingly creating a 'grave risk of death' " satisfies the statutory requirement. (*Banks*, at p. 808.) Thus, "the fact a participant in [or planner of] an armed robbery could anticipate lethal force might be used" is not sufficient to establish reckless indifference to human life. (*Ibid.*; see *Clark*, at p. 623.)

Our Supreme Court has also provided relevant factors in analyzing "the totality of the circumstances to determine whether [the defendant] acted with reckless indifference to human life," which include: "Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony? [Citation.] '[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient.' " (*In re Scoggins* (2020) 9 Cal.5th 667, 677.)

There is significant evidence in the record that defendant did not minimize the risk of violence because defendant planned the robbery, used a knife to stab B.S. in the face and head, and engaged in the simultaneous attack of the victims before fleeing the scene. (See *People v. Williams* (2020) 57 Cal.App.5th 652, 664 [defendant fleeing the scene of a crime demonstrated reckless indifference to human life].) The coordinated and surprise nature of the attack also suggests defendant planned that and was aware that knives would be used in the robbery. Substantial evidence supports the court's finding that defendant acted with reckless indifference to human life.

9

We see no error in the trial court's denial of defendant's petition.

DISPOSITION

The postjudgment order denying the section 1172.6 petition is affirmed.


                                      /s/
                                  Duarte, J.


We concur:


/s/
Earl, P. J.


/s/
Renner, J.